**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| HANCOCK WHITNEY BANK, | § | |
| Plaintiff, | § | |
| vs. | § | CIVIL ACTION NO.: 1:25-cv-00395-JB-C |
| AMERICAN RENTAL & ENTERTAINMENT, LLC, et al., | § | |
| | § | |
| Defendants. | | |

## REPORT AND RECOMMENDATION

This matter is before the Magistrate Judge for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. Gen. L.R. 72(a)(2)(S), on Plaintiff Hancock Whitney Bank's (hereinafter "Plaintiff" or "Hancock Whitney") Motion for Summary Judgment. (Doc. 44). Defendant Palmer Real Estate Holdings, LLC ("Defendant" or "Palmer Holdings") has not responded to Plaintiff's motion. Upon consideration of the pleadings, and the record as a whole, it is recommended that Plaintiff's Motion for Summary Judgment be **GRANTED**.

## PROCEDURAL HISTORY

On September 23, 2025, Plaintiff filed its Complaint (Doc. 1), in which it seeks to collect unpaid balances that are due from Defendants American Rental & Entertainment, LLC ("American Rental"), Palmer Holdings, and Jason T. Palmer ("Palmer"). Summonses for each of the Defendants were issued on September 25, 2025, (Docs. 4-5), and were served on Jason T. Palmer, as Registered Agent for Palmer Holdings and American Rental on September 25, 2025. (*See* Docs. 7-9).

On November 6, 2025, all Defendants filed an Answer to the Complaint. (Doc. 14). Plaintiff filed a Motion for Summary Judgment on December 30, 2025. (Doc. 17). The Court set a briefing schedule requiring Defendants to respond to the Motion for Summary Judgment not later than February 26, 2026. (Doc. 22). A reply to the response was due not later than March 12, 2026. On February 26, 2026, American Rental filed a Suggestion of Bankruptcy on the record in this action. (Doc. 24). This action was then stayed as to American Rental. (Doc.26). Plaintiff's Motion for Summary Judgment was heard by the Court on May 20, 2026, with counsel for Plaintiff and Palmer Holdings appearing. During the hearing, the Court was informed that Defendant Palmer had filed for bankruptcy and the parties appearing had reached an agreement for the entry of a consent judgment. (Doc. 32). The Court denied without prejudice the Motion for Summary Judgment, allowing Plaintiff to refile its motion on a schedule to be set out by the Court. (*Id*.). The appearing parties were ordered to file the consent agreement and a proposed order for consideration by the Court not later than June 3, 2026. (*Id*.). Thereafter, Defendant Palmer filed a Suggestion of Bankruptcy on the record in this action. (Doc. 34). The case was then stayed as to Palmer. (Doc. 35). On June 5, 2026, Plaintiff and Palmer Holdings filed the Joint Motion to Approve Consent Judgment (Doc. 36), and the Proposed Consent Judgment (Doc. 37).

Thereafter, the Court directed Plaintiff to file a supplemental motion regarding the requests for entry of consent judgment on or before July 23, 2026. (*See* Doc. 39). Specifically, the Court requested Plaintiff explain the propriety of a consent judgment in this case and address the concerns referenced in the Courts' order (Doc. 39) and provide an affidavit regarding the parties' calculation of prejudgment interest for an amount owed as of a date certain and support for the attorneys' fees and costs associated with the collection of funds owed to Plaintiff in the amount of $22,465. 34. (*See Id*.). After entry of Doc. 39, Plaintiff and Defendant Palmer Holdings

filed a motion requesting an extension of the Court's deadline to comply with Doc. 39, or alternatively, a hearing to provide additional information and/or clarification and further instruction regarding compliance with the Order (Doc. 39). Based on the parties' request, a conference was held with counsel for Plaintiff and counsel for Palmer Holdings. Thereafter, Plaintiff renewed its Motion for Summary Judgment (Doc. 44).[1] Defendant Palmer Holdings has not responded to the Motion for Summary Judgment.

The Court's findings of facts and conclusions of law based upon a review of the motion for summary judgment and its attachments as well as the record in its entirety, are set forth herein.

## JURISDICTION AND VENUE[2]

In the Complaint, Plaintiff alleges venue is proper in the Southern District of Alabama. Plaintiff alleges jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a). The Complaint asserts that Hancock Whitney is a Mississippi banking organization that is organized under the laws of the State of Mississippi with its principal place of business in Mississippi and routinely conducts business in the State of Alabama.[3] (Doc. 1, PageID.1, ¶ 1). Defendant American Rental is a limited liability company and conducts/conducted business in the State of Alabama. (Doc. 1, PageID.2). Defendant Palmer is the registered agent for American Rental, and its registered street address is 5480 Willis Road, Theodore, Alabama 36582. (*Id.*). Palmer is the sole member of American Rental, holding a one hundred percent (100%) membership interest. (*Id.*). Palmer is a citizen of Mobile County, Alabama, whose domicile is 1675 Rockstone Lane, Mobile,

---

[1] The Court treats the renewed Motion for Summary Judgment (Doc. 44) as the operative motion.

[2] During the conference on July 28, 2026, the Court directed the parties to provide information the Court can use to ensure the Court has jurisdiction, including personal jurisdiction, and that venue has been adequately supported. The Motion for Summary Judgment does not specifically address jurisdiction or venue. Nevertheless, the record contains sufficient facts for the Court to determine jurisdiction and venue.

Alabama 36695. (*Id.*). Palmer Holdings is an Alabama limited liability company and conducts/conducted business in the State of Alabama. (*Id.*). Again, Palmer is the registered agent, whose registered street address is 5480 Willis Road, Theodore, Alabama 36582. (*Id.*). Palmer is also the sole member of Palmer Holdings, holding a one hundred percent (100%) membership interest. (*Id.*).

Lastly, the amount in controversy exceeds $75,000.00, exclusive of costs and interest. (Doc. 1, PageID.2, ¶ 6).

The citizenship allegations are accepted as true since they were presented by counsel for Hancock Whitney. Pursuant to Rule 11, an attorney, by presenting to the court a pleading… certifies that to the best of the person's knowledge, information, and belief, formed after a reasonable inquiry under the circumstances … the factual contentions have evidentiary support." FED. R. CIV. P. (11)(b)(3).

Based on the foregoing, the Court finds diversity jurisdiction exists here.

The Court has also considered whether personal jurisdiction over the defendants exists in this action. *See Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990) ("Service of Process is a jurisdictional requirement: a court lacks jurisdiction over the person of a defendant when that defendant has not been served."). "The concept of personal jurisdiction comprises two distinct components: amenability to jurisdiction and service of process." *Prewitt Enters., Inc. v. Org. of Petroleum Exporting Countries*, 353 F.3d 916, 925 n. 15 (11th Cir. 2003). "Amenability to jurisdiction means that a defendant is within substantive reach of a forum's jurisdiction under applicable law." *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1264 (5th Cir. 1983). "Service of process is simply the physical means by which that jurisdiction is asserted." *Id.*

Defendant Palmer Holdings is an Alabama limited lability company that conducts and has conducted business in Alabama. Plaintiff has presented proof of service on Palmer, the registered agent for Defendant Palmer Holdings, in Mobile County, Alabama. (*See* Docs. 8). Defendant Palmer Holdings was served by a process server with the summons and Complaint on September 25, 2025. There is no reason to doubt that service was not proper. Based on facts in the record, it is determined that Palmer Holdings is amendable to the jurisdiction of this Court, and this Court has personal jurisdiction over Palmer Holdings. It is further determined venue is proper in the Southern District of Alabama pursuant to 28 U.S.C. § 1391.

**FINDINGS OF FACT RELEVANT TO SUMMARY JUDGMENT MOTION**

On December 30, 2021, Palmer, on behalf of American Rental and Palmer Holdings, executed a Promissory Note ending in 6856 ("Note 6856"), in favor of Hancock Whitney, in the amount of $2,753,700.00. (*See* Docs. 1-2, 44). Also, on or about December 30, 2021, Palmer, as Manager of American Rental and Palmer Holdings, executed a Commercial Security Agreement ("Security Agreement"), in favor of Hancock Whitney, in the amount of $2,753,700.00. (*See* Docs. 1-3, 44).

Under Note 6856, Palmer Holdings and American Rental agreed to make 179 payments beginning on January 30, 2022 with the final payment being due on December 30, 2036 to include all principal and all accrued interest not yet paid. (Doc.17-1, PageID.138). Note 6856 provides that failure to make payments when due is an event of default under the Note. (*Id.*). Upon default, the interest rate on Note 6856 increases to eighteen percent (18.000%) per annum based on a year of 360 days. (Doc. 1-2, PageID.14). Note 6856 also allows for late charges. The note provides that American Rental and Palmer Holdings will be charged five percent (5.000%) of the unpaid portion

of the regularly scheduled payment or one thousand dollars ($1,000.00), whichever is less, if a payment is 10 days or more late. (*Id.*).

By signing the Security Agreement, American Rental and Palmer Holdings granted to Hancock Whitney a security interest in collateral, including certain business assets, to secure the indebtedness under Note 6856. (Doc. 1-3, PageID.20). The Security Agreement provides that failure to make any payment when due under Note 6856 is an event of default under the Agreement. The Security Agreement states the following regarding rights and remedies of Hancock Whitney on default:

> **RIGHTS AND REMEDIES ON DEFAULT**. If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the Alabama Uniform Commercial Code. In addition and without limitation, Lender may … declare the entire Indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately due and payable, without notice of any Kind to Grantor.

(Doc. 1-3, PageID.22).

Palmer Holdings defaulted on Loan 6856 under the terms of Note 6856. (Doc. 44-1, PageID.216). Hancock Whitney accelerated the indebtedness contemplated therein. (*Id.*) As of July 30, 2026, the outstanding amount owed to Hancock Whitney on Loan 6856 was $2,463,484.87, which consists of a principal balance of $2,309,648.13, accrued interest in the amount of $141,073.85 (per diem $358.81), and late fees in the amount of $12,762.89. (*Id.*). This total amount does not include continuing interest and continuing costs and expenses. (*Id.*). As of September 17, 2026, the amount of principal owed was $2,303,188.33 and the amount of interest accrued was $149,859.92. (*See* Doc. 47). Palmer Holdings has not contested the foregoing facts.

## STANDARD OF REVIEW

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has met its burden, the burden shifts to the nonmovant to show the existence of a genuine issue of material fact. *Id*. "If the nonmoving party fails to make a 'sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id*. (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

When deciding whether summary judgment is appropriate, the Court must view the evidence and all reasonable factual inferences in the light most favorable to the party opposing the motion. *Witter v. Delta Air Lines, Inc.*, 138 F.3d 1366, 1369 (11th Cir. 1998) (citations and quotations omitted). Nevertheless, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F2d 1573, 1577 (11th Cir. 1990). "Speculation does not create a genuine issue of fact." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (citation omitted). If the evidence advanced by the nonmoving party "is merely colorable, or is not

significantly probative, then summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

**ANALYSIS**

Hancock Whitney seeks summary judgment in its favor against Palmer Holdings. Hancock Whitney contends there are no genuine disputes as to any material facts in this matter. Hancock Whitney alleges it performed its obligations under the Loan Documents (Note 6856 and Security Agreement) but Palmer Holdings defaulted on its obligations to Hancock Whitney under Note 6856 and the Security Agreement by failing to make payments as they became due. Hancock Whitney asserts Palmer Holdings' default on all Loan Documents caused damage to Hancock Whitney. Hancock Whitney requests this Court enter judgment against Palmer Holdings and in favor of Hancock Whitney in the amount of $2,489,325.60, plus continuing fees, costs and post-judgment intertest.

Defendant Palmer Holdings has not responded to the Motion for Summary Judgment. In situations where the nonmoving party fails to respond to a motion for summary judgment, the Court's responsibility is as follows:

> Because Rule 56(a) specifies that summary judgment may be entered only when the record evidence shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law, "the district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed but, rather, must consider the merits of the motion." On the other hand, the Court's review when defendants do not respond to a motion for summary judgment is less searching than when they do respond. "The district court need not sua sponte review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials. At the least, the district court must review all of the evidentiary materials submitted in support of the motion for summary judgment." Should this review reveal the plaintiff's entitlement to summary judgment, under *Resolution Trust Corp., supra*, the Court will not consider any legal or

> factual arguments the defendants could have, but have not, asserted in opposition.

*Whitney Bank v. Peavy*, No. CV 14-0080-C, 2014 WL 12573672, at *4 (S.D. Ala. July 31, 2014) (citations omitted).

Hancock Whitney bears the initial burden of showing the Court, "by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). Hancock Whitney must support "its assertion that there is no genuine issue of material fact by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ... admissions, interrogatory answers, or other materials' or by 'showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.'" *Bass v. M/V STAR ISFJORD*, 644 F. Supp. 3d 1001, 1004 (S.D. Ala. 2022) (quoting Fed. R. Civ. P. 56(c)(1). While the Court "need consider only the cited materials … it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

The Complaint alleges one (1) claim for breach of contract (Count One) against Palmer Holdings for its breach of Note 6856. (Doc. 1, PageID.6). In Alabama, the elements for a breach of contract claim are: "'(1) the existence of a valid contract binding the parties; (2) [plaintiff's] performance under the contract; (3) the defendant's nonperformance; and (4) damages.'" *Shoals Extrusion, LLC. v. Beal,* 288 So.3d 448, 451 (Ala. 2019) (quoting *Capmark Bank v. RGR, LLC*, 81 So.3d 1258, 1267 (Ala. 2011)). In the motion, Plaintiff cites the declaration of Jeremy Martin (Doc. 44-1) in support of its undisputed facts related to Loan 6856 and its request for damages, along with the declaration of Joshua D. Friedman, but does not cite to any other materials in the

record, including Note 6856 or the Security Agreement.[4] Considering the declarations and the record, the evidence shows as follows. Hancock Whitney loaned Palmer Holdings the sum of $2,753,700.00 on a note dated December 30, 2021. (Doc. 1-2). Palmer Holdings also executed the Security Agreement in the amount of $2,753,700.00. (Doc. 1-3). Palmer Holdings defaulted on Loan 6856 under the terms of Note 6856, and Hancock Whitney accelerated the indebtedness contemplated in the note. (Doc. 44-1, PageID.216). As of July 30, 2026, the outstanding amount owed to Hancock Whitney on the 6856 Loan was $2,463,484.87, which consists of a principal balance of $2,309,648.13, accrued interest in the amount of $141,073.85 (per diem $358.81), and late fees in the amount of $12,762.89. (*Id.*). The Note allows for accrued interest and late payment charges. (Doc. 1-2, PageID.14). Hancock Whitney's Declaration of Interest Computation shows that as of September 17, 2026, it seeks $149,859.92 in accrued interest based on a principal amount of $2,303,188.33 at a rate of 5.5% for 425 days.[5] (*See* Doc. 47).

The declaration of Mr. Martin (Doc. 44-1) provides the amount of late fees due from Palmer Holdings. The damages amount of $2,463,484.87 set forth in the Motion for Summary Judgment does not include continuing interest, costs, expenses and attorneys' fees.

Mr. Friedman's declarations and supporting documentation shows attorneys' fees and expenses incurred as of June 30, 2026 total $25,841.05.

Alabama law allows pre-judgment interest in a breach of contract action at the rate agreed to by the parties to the contract. Ala. Code § 8-8-8.[6] The Note in this action contains the following provision for the interest rate to be charged upon default:

---

[4] A copy of Note 6856 was provided with the first Motion for Summary Judgment (Doc. 17).

[5] Having reviewed the declaration and calculated the numbers, the Court finds the per diem of $351.88 is based on a 360-day year.

[6] Section 8-8-8, Code of Alabama, 1975, states:

> Upon default, including failure to pay upon final maturity, the interest rate on this Mote shall be increased to 18.000% per annum based on a year of 360 days. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

(Doc. 1-2, PageID.14). The enforceability of clauses in promissory notes calling for default interest rates of 18% has been upheld in this Court. *See eg., Whitney Bank v. Point Clear Dev., LLC*, 2012 WL 2277597, at *5 (S.D. Ala. June 18, 2012) ("18% default rates are a common feature of modern commercial loans, and have been routinely enforced by courts applying Alabama law, including several recent cases emerging from this District Court.") (collecting cases); *Vision Bank v. Hill*, 2011 WL 250430, at *3 (S.D. Ala. Jan. 25, 2011) (awarding 18% default interest rate provided in promissory notes). Again, counsel for Plaintiff has calculated that interest has accrued for the past 425 days at a rate of 5.5% interest and $351.88 per diem. (*See* Doc.47, PageID.259).

Having considered the evidence and all reasonable factual inferences in the light most favorable to the Defendant Palmer Holdings, the Court finds, for all the foregoing reasons, that there are no genuine issues of material fact and summary judgment in favor of Plaintiff Hancock Whitney is due to be **GRANTED** as to the breach of contract claim against Palmer Holdings. Regarding general damages sought, the Court finds damages in the amount of **$2,465,811.14** should be awarded to Hancock Whitney against Palmer Holdings. This award consists of principal in the amount of $2,303,188.33, prejudgment interest in the amount of $149,859.92, and late fees in the amount of $12,762.89. The principal and interest amounts are based on the figures set forth in Hancock Whitney's declaration of interest computation (Doc. 47).

---

> All contracts, express or implied, for the payment of money, or other thing, or for the performance of any act or duty bear interest from the day such money, or thing, estimating it at its money value, should have been paid, or such act, estimating the compensation therefor in money, performed.

As to Plaintiff's claim for attorneys' fees and expenses, the Note provide for attorneys' fees and expenses in the event of a default. The Note provides, in part, as follows:

> **ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. If not prohibited by applicable law, Borrower also will pay any courts costs, in addition to all other sums provided by law.

(Doc. 1-2, PageID.15). The Security Agreement contains a similar provision regarding attorneys' fees and expenses:

> **Attorneys' Fees; Expenses**. Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

(Doc.1-3, PageID.23). Hancock Whitney has submitted evidence that it incurred attorneys' fees and expenses totaling $25,841.05. (*See* Doc. 44-2).

> In Alabama, in state law causes of action, attorney fees are recoverable as part of the costs of an action only where authorized by statute, when provided in a contract, or by special equity, such as a proceeding where the efforts of an attorney create a fund out of which fees may be paid. The reasonableness of an attorney fee under a contract providing for the recovery of reasonable attorney fees is largely within the discretion of the trial court. This discretion is an "'advised, just, judicial and revisable discretion in the light of the whole record.'

*Lanier v. Moore-Handley, Inc.*, 575 So. 2d 83, 85 (Ala. 1991). (Citations omitted). The Court has an obligation to determine the reasonableness of the attorneys' fees sought. "The starting point for determining a reasonable fee award is multiplying the number of attorney hours reasonably expended by a reasonable hourly rate." *Andrews v. United States*, 122 F.3d 1367, 1375 (11th Cir. 1997) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983)). The product of the reasonable hourly rate multiplied by the number of hours reasonably expended on the litigation is referred to as the "'lodestar.'" *Langford v. Hale Cnty. Alabama Comm'n*, No. CV 2:14-00070-KD-M, 2016 WL 4976859, at *1 (S.D. Ala. Sept. 16, 2016) (citing *Perdue,* 559 U.S. at 552). [The] reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Renasant Bank, Inc. v. AVE, Inc.*, No. CV 19-0733-CG-MU, 2021 WL 1324532, at *4 (S.D. Ala. Jan. 14, 2021). "A lodestar figure that is based upon a reasonable number of hours spent on a case multiplied by a reasonable hourly rate is itself strongly presumed to be reasonable." *Resolution Trust Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1150 (11th Cir. 1993); *see also Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986).

Several factors may be used to assist the Court when considering the lodestar figure, including:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Ass'n of Disabled Ams. v. Neptune Designs, Inc*., 469 F.3d 1357, 1359 n.1 (11th Cir. 2006) (*citing Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714, 717–19 (5th Cir. 1974)). The Court first considers how many hours were reasonably expended for work in this matter, then what hourly rates are reasonable.

> "Fee applicants must exercise what the Supreme Court has termed 'billing judgment,' which requires the exclusion of excessive, redundant, or otherwise unnecessary hours." Indeed, "[i]f fee applicants do not exercise billing judgment, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are 'excessive, redundant, or otherwise unnecessary.'" "Courts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." "Excluding excessive or otherwise unnecessary hours under the rubric of 'billing judgment' means that a lawyer may not be compensated for hours spent on activities for which he would not bill a client of means who was seriously intent on vindicating similar rights, recognizing that in the private sector the economically rational person engages in some cost benefit analysis." "Moreover, because an assessment of the reasonableness of the hours requested (at least when objection is adequately raised by the defendant) contemplate[s] a task-by-task examination of the hours billed, plaintiffs' counsel is required to record each task, and the time associated with each, with sufficient clarity that the Court can evaluate the reasonableness of the expenditure of time."

*BMO Bank N.A. v. Byrant*, No. 1:24-CV-6-TFM-M, 2025 WL 1136135, at *2 (S.D. Ala. Apr. 17, 2025) (citations omitted).

In situations where many attorneys represent a client, "redundant hours 'generally occur." *Langford*, 2016 WL 4976859, at *5 (quoting *Norman v. Hous. Auth. Of City of Montgomery*, 836 F.2d 1292 (11th Cir. 1988)). "There is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." *Reguena v. Doug Connor, Inc.*, No. 6:20-CV-1670-EJK, 2022 WL 17609073, at *2 (M.D. Fla. Dec. 13, 2022) (citing

*Norman*, 836 F.2d at 1302). Plaintiffs have the burden of showing that the time expended by their attorneys "reflects the distinct contribution of each lawyer to the case and is the customary practice of multiple lawyer litigation." *Reguena*, 2022 WL 17609073, at *2 (citing *Barnes*, 168 F.3d at 432). "If the attorneys are doing the same work, a reduction in hours for redundancy is warranted." *Id.*

Purely clerical or secretarial tasks are not compensable, regardless of who might perform them. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n. 10 (1989). Non-recoverable clerical tasks include as follows:

> setup of a file, calendaring deadlines, receiving, reviewing, and indexing documents, sending or receiving emails with documents attached, preparing civil cover sheets and summons, receiving and indexing certified mail receipts, e-filing documents with the Court, receiving and indexing those documents, mailing and telefaxing correspondence, making calls to clients, obtaining pleadings from the court's database, printing documents, miscellaneous scanning of documents, etc.

*Ford v. Navika Capital Group, LLC*, Civil Action No. 14-00311-KD-C, 2017 WL 1381668 at *3 (S.D. Ala. April 17, 2017).

Further, "Courts have… approved across-the-board reductions in block-billed hours to offset the effects of block billing." *Nicholson v. RB2, LLC*, No. 1:19-CV-344-TFM-N, 2021 WL 895602, at *3 (S.D. Ala. Mar. 9, 2021). "'Block billing' occurs when an attorney lists all the day's tasks on a case in a single entry, without separately identifying the time spent on each task." *Id.* Block billing "makes it difficult, if not impossible, to calculate with any precision the number of hours an attorney devoted to a particular task." *Id.*

The billing records provided by Hancock Whitney include some instances of block billing. The billing records also show some duplicative entries among attorneys and paralegals as well as billing for administrative tasks performed by attorneys and paralegals. "A court may award fees

for the work of non-lawyer paralegals and non-lawyer law clerks, but only to the extent they perform work 'traditionally done by an attorney.'" *Nicholson v. RB2*, LLC, No. 1:19-CV-344-TFM-N, 2021 WL 895602, at *3 (S.D. Ala. Mar. 9, 2021) (quoting *Kent v. Gulf Coast Sec. Enters. LLC*, Civ. Act. No. 18-00106-CG-C, 2018 U.S. Dist. LEXIS 208769 at *7, 2018 WL 6933393, at *3 (S.D. Ala. Dec. 10, 2018) (citations omitted)). "Work that may appropriately be performed by paralegals and billed to a client or a losing party includes 'factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence.'" *Nicholson*, 2021 WL 895602, at *3 (quoting *Allen v. McClain EZ Pack of Ala., Inc.*, Civ. Act. No. 03-0490-WS-M, 2005 U.S. Dist. LEXIS 43487 at *9, 2005 WL 1926636, at *3 (S.D. Ala. Aug. 8, 2005)).

This matter has been pending since September 2025. Between May 2025 and June 2026, counsel for Hancock Whitney spent 97.5 hour on this matter, including paralegal work. The billing summaries show that 50.4 hours worked appear to be strictly related to the bankruptcy cases. Plaintiffs have not cited any law that allows them to recover attorneys' fees in this case for work billed in the bankruptcy cases, and the Court is not aware of any such authority. The 50.4 hours worked on the bankruptcy cases are not recoverable in this action. In addition, the Court deems 2.9 hours duplicative and 1.9 hours as administrative work performed by attorneys and paralegals that cannot be recovered. Thus, the Court finds a reduction of 55.2 hours is appropriate here. The chart below sets forth the claimed hours for each attorney and paralegal and the adjusted hours.

| | **CLAIMED HOURS** | **ADJUSTED HOURS** |
|---|---|---|
| J. Hartley | 50 | 13.4 |
| J. Friedman | 18.7 | 17.1 |

| | | |
|---|---|---|
| L. Lucey | 4.7 | 0 |
| K. Mallette | 7.7 | 6.1 |
| M. Wells | 5.6 | 4.8 |
| D. Clausen | 2.2 | .1 |
| V. Christian | 8.2 | .8 |
| M. Nicholas | .4 | 0 |
| **TOTAL** | **97.5** | **42.3** |

The Court next determines whether the hourly rates billed are reasonable. "[T]he prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation" will be the standard for deciding the reasonable hourly rate. *Norman v. Hous. Auth*., 836 F.2d 1292, 1299 (11th Cir. 1988). "The general rule is that the 'relevant market' for purposes of determining the reasonable hourly rate for any attorney's service is 'the place where the case is filed.'" *Am. Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999) (quoting *Cullens v. Georgia Dep't. of Transp*., 29 F.3d 1489, 1494 (11th Cir. 1994)).

Plaintiff bears the burden of providing that level of specific and detailed information from which this Court may determine the reasonable hourly rate for the work performed. *Norman*, 836 F.2d. That information, at a minimum should contain "more than the affidavit of the attorney performing the work." *Id.* at 1299. "Additionally, the Court, which is familiar with the prevailing rates in the local market, may act as its own expert and rely on its 'knowledge and experience' to determine the reasonableness and propriety of the requested rates. *McKean v. City of Mobile*, No. CV 1:22-00289-KD-N, 2023 WL 5004062, at *6 (S.D. Ala. Aug. 4, 2023) (citing

*Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994)). "This Court's prior awards are relevant and instructive in determining whether the requested rate is in line with prevailing market rates in this district for attorneys of reasonably comparable skill, experience, and reputation to the attorney seeking an award of fees. *d'Amico Dry d.a.c. v. Nikka Finance, Inc.*, 2019 WL 2995922, at *2 (S.D. Ala., 2019) (citation and internal quotation marks omitted). "However, 'a court should hesitate to give controlling weight to prior awards, even though they may be relevant.'" *Nicholson*, 2021 WL 895602, at *4 (quoting *Dillard v. City of Greensboro*, 213 F.3d 1347, 1355 (11h Cir. 2000)).

The declaration of Mr. Friedman does not identify by name any other person at Helmsing, Leach, Herlong, Newman & Rouse, P.C. who worked on the instant matter. Instead, the declaration identifies the hours expended, the hourly rates charged and the total amount billed by category – "Partners," "Associates," and "Paralegals." The declaration generally states Mr. Friedman is an attorney in good standing with the Alabama State Bar; Mr. Friedman has been practicing creditor's rights and insolvency litigation in this district for over 14 years; his experience in the field of creditor's rights and insolvency litigation is extensive. The declaration also states, "[o]thers in our office may have also worked on this filed and they each have extensive experience in their respective fields: mortgage restructuring, title work, foreclosures and creditor's rights and insolvency litigation." (*See* Doc. 44-2, PageID.219). Neither affidavits nor declarations were provided for the other attorneys who billed for services rendered in this matter. The billing records submitted each contain a section entitled "Summary of Services," which lists the full names, hours expended, the hourly rate charged, and the amount billed for each person at Helmsing Leach who worked on this matter for each billing cycle. The partners, associates and paralegals are only distinguishable in the billing records by their hourly rates.

Thus, comparing Mr. Friedman's declaration with the billing records, the Court determines the attorneys at Helmsing, Leach, Herlong, Newman & Rouse, P.C. billed at the following rates: J. Hartley at $315/hour, J. Friedman at $260/hour, and L. Lucey at $260/hour. The declaration and records also show paralegals K. Mallette, M. Wells, D. Clausen, V. Christian, and M. Nicholas billed at the rate of $135/hour.

A review of Mr. Hartley's profile on the Helmsing Leach website shows he earned his J.D. in 1990 and has almost thirty years of experience in creditor's rights and insolvency litigation. Ms. Lucey's profile shows she earned her J.D. in 2024 and L.L.M. in 2025 and practices in the areas of taxation, estate planning, estate and trust administration and corporate and business transactions.

In this case, the relevant legal community is Mobile, Alabama. *See Am. Civil Liberties Union of Georgia v. Barnes*, 168 F.3d at 437. The Court finds the attorney's and paralegal's rates are acceptable for cases in this area. *See e.g. Renasant Bank, Inc. v. AVE, Inc.*, 2021 WL 1324532 (S.D. Ala. Jan. 14, 2021); *Hardy v. City of Selma*, No. 2:21-CV-522-TFM-B, 2024 WL 4246084, at *7 (S.D. Ala. Sept. 19, 2024) ("Recognizing that inflation has led to increases in all facets of society – to include attorneys' prevailing rates, the Court deems it appropriate to shift upward from those recent awards."); *BMO Bank N.A. v. Byrant*, 2025 WL 1136135 (S.D. Ala. Apr. 17, 2025).

The Lodestar Calculation is as follows:

| | **HOURLY RATE** | **ADJUSTED HOURS** | **AMOUNT (ROUNDED TO THE NEAREST DOLLAR)** |
|---|---|---|---|
| J. Hartley | $315 | 13.4 | $4,221 |

| | | | |
|---|---|---|---|
| J. Friedman | $260 | 17.1 | $4,446 |
| L. Conwell | $260 | 0 | $0 |
| K. Mallette | $135 | 6.1 | $823.50 |
| M. Wells | $135 | 4.8 | $648 |
| D. Clausen | $135 | .1 | $13.50 |
| V. Christian | $135 | .8 | $108 |
| M. Nicholas | $135 | 0 | $0 |
| **TOTAL** | | | **$10,260.00** |

Accordingly, the Court finds the lodestar is **$10,260.00.**

"[T]here is a strong presumption that the lodestar is the reasonable sum the attorneys deserve." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008). "When the number of compensable hours and the hourly rate are reasonable, a downward adjustment to the lodestar is merited only if the prevailing party was partially successful in its efforts." *Id.* at 1350-1351. In *Bivins*, the Court of Appeals notes "[w]hat constitutes partial success is determined on a case-by-case basis." *Id.* at n.3 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). Here, Hancock Whitney was successful as to its breach of contract claim against Palmer Holdings. Thus, the Court finds no downward adjustment to the Lodestar is necessary.

Having reviewed the billing statements, and considering the *Johnson* factors, it is determined the Plaintiff is entitled to reasonable attorneys' fees in the amount of **$10,260.00.**

Plaintiff seeks to recover expenses associated with this action in the total amount of $753.55, consisting of $405.00 for court costs, $140.60 for process server, $29.80 for copying, $103.65 for obtaining Alabama Secretary of State UCC records, and $74.50 for research. These expenses are listed in Mr. Friedman's declaration and can be found in the billing records.

Plaintiff's counsel does not cite to any statutory or case law in support of its request for these expenses. Federal Rule of Civil Procedure 54(d) provides that "costs – other than attorney's fees – should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). However, "federal courts are bound by the limitations set out in 28 U.S.C. § 1920." *Arcadian Fertilizer, L.P. v. MPW Indus. Servs., Inc.*, 249 F.3d 1293, 1296 (11th Cir. 2001). The Note and Security Agreement generally allow for recovery of "legal expenses" and court costs.

Costs for service of process may be taxed under 28 U.S.C. § 1920, which provides as follows:

> A judge or clerk of any court of the United States may tax as costs the following:
>
> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

Such costs are limited, however, to the amount allowable for service by the U.S. Marshal's Service. *See U.S. E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 624 (11th Cir. 2000). Pursuant to 28 C.F.R. § 0.114, the cost allowed for personal service is "$65 per hour (or portion thereof) for each item served by one U.S. Marshals Service employee, agent, or contractor, plus travel costs and any other out-of-pocket expenses." § 0.114(a)(3). Here, Hancock Whitney seeks to recover the expense of $104.60 for personal service. The record shows that copies of the summons and complaint for American Rental, Palmer, and Palmer Holdings were served on Palmer, registered agent for American Rental and Palmer Holdings. The summary judgment motion is only against Palmer

Holdings. Considering the foregoing, the Court finds the expense of $104.60 for personal service of process upon one (1) defendant unreasonable. The Court will award the amount of $65.00 for service of process.

The court cost of $405.00 is allowed under the Note, the Security Agreement, and 28 U.S.C. § 1920(1), as this is the fee to file a complaint in this District. The Court finds this expense reasonable.

Plaintiff also seeks to recover the amount of $29.80 for copies. "The cost of making copies is taxable 'where the copies are necessarily obtained for use in the case.'" *68V BTR Holdings, LLC v. City of Fairhope*, No. CV 22-0430-WS-B, 2024 WL 4092962, at *7 (S.D. Ala. Sept. 5, 2024) (quoting 28 U.S.C. § 1920(4)). "Copies attributable to discovery, copies of pleadings, correspondence, documents tendered to the opposing party, copies of exhibits, and documents prepared for the Court's consideration are recoverable." *Blevins v. Heilig-Meyers Corp.*, 184 F.R.D. 663, 668 (M.D. Ala. 1999). Copies obtained solely for counsel's convenience are not taxable under 28 U.S.C. § 1920(4). *Id.* The Court cannot determine whether this expense is necessary, as Hancock Whitney has not provided the Court with any information regarding photocopying. However, the Court will allow this expense due to the general language of the attorneys' fees and expenses provisions in the Note and Security Agreement.

Research is not considered a "cost" under 28 U.S.C. § 1920. The expense for legal research in the amount of $74.50 and the expense of obtaining Uniform Commercial Code records from the Alabama Secretary of State in the amount of $103.65 are allowed under the Note and the Security Agreement, as these expenses fall under the general category of legal expenses.

The Court finds Hancock Whitney is entitled to recover reasonable expenses in the amount of **$677.95**.

Palmer Holdings has decided not to respond to the complaint or defend itself in any way. It has made no argument that the attorneys' fees and expenses sought are unreasonable. Thus, Hancock Whitney is entitled to an award of attorneys' fees and expenses totaling **$10,937.95**.

As to Hancock Whitney's claim for post-judgment interest, (Doc. 1, at 12), the United States Code provides for interest "on any money judgment in a civil case recovered in a district court," 28 U.S.C. § 1961. Therefore, post-judgment interest should accrue at the federal rate set forth in 28 U.S.C. § 1961.

Considering the stay of this action as to American Rental and Palmer due to the bankruptcy proceedings and Palmer Holdings' lack of response to the Motion for Summary Judgment, it is determined that there is no just reason to delay entry of final judgment against Palmer Holdings. *See* Fed. R. Civ. P. 54(b). Thus, it is recommended that final judgment be entered against Palmer Holdings following the necessary period for objections to this Report and Recommendation and resolution of any such objections.

## CONCLUSION

Having considered the evidence and all reasonable factual inferences in the light most favorable to the Defendant Palmer Holdings, the Court finds, for all the foregoing reasons, that there are no genuine issues of material fact and recommends that summary judgment in favor of Hancock Whitney be **GRANTED** as to the breach of contract claim against Palmer Holdings.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. L.R. 72.4. The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate

judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on un-objected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review an appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** and **ORDERED** this the 22nd day of September, 2026.

**s/WILLIAM E. CASSADY**
**UNITED STATES MAGISTRATE JUDGE**